**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**RUBY HISER**                                                                                              **PLAINTIFF**

**v.**                                            **No. 4:11CV00517 KGB**

**XTO ENERGY INC.**                                                                                **DEFENDANT**

**ORDER**

On October 8, 2012, defendant XTO Energy Inc. ("XTO") filed its renewed motion for judgment as a matter of law and for new trial. XTO contends in its motion that the jury improperly considered extra-record evidence in reaching its verdict. In support of its contention, XTO relies on information obtained from post-trial juror interviews. On September 5, 2012, after the trial concluded, the Court entered an Order permitting counsel to contact jurors who were open to being contacted. Three jurors consented to contact.

In support of its renewed motion, XTO submitted an affidavit from juror Carrie Tranum. Ms. Tranum states in her affidavit that a fellow juror asked during deliberation whether fracking had been used. The juror then proceeded to explain to the other jurors what fracking is.

At approximately 1:00 p.m. on the day the jury deliberated, the jury sent two notes to the Court. One of the notes contained the following question: "Were they drilling only or were they also fracking?" After conferring with counsel for the parties, and without objection from either party, the Court sent the following response to the jury, "You have all of the evidence in this case. You will have to make your decision based on what you recall of the evidence, and the instructions provided." Ms. Tranum states in her affidavit that, despite the response from the Court, she "is of the opinion [that] the discussion of fracking played a significant part in the ultimate verdict reached by the jury in this matter" (Dkt. No. 99-1).

To obtain a new trial based on juror misconduct, a party must "(1) produce evidence which is not barred by the rule of juror incompetency and (2) produce evidence sufficient to prove grounds recognized as adequate to overturn the verdict." *United States v. Evans*, 220 F.3d 950, 954 (8th Cir. 2000). Rule 606(b) of the Federal Rules of Evidence generally prohibits a juror from testifying regarding the jury's deliberations, "except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention . . . ." Fed. R. Evid. 606(b).

"Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons." *United States v. Rodriquez*, 116 F.3d 1225, 1227 (8th Cir. 1997). "In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that materials are prejudicial to the unsuccessful party." *Moore v. American Family Mut. Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009) (internal quotation marks omitted). "The district court must consider relevant testimony and other evidence as to what occurred to determine 'whether there is a reasonable possibility that the communication altered the jury's verdict . . . .'" *Id.* (quoting *Anderson v. Ford Motor Co.*, 186 F.3d 918, 921 (8th Cir. 1999)).

XTO cites Ms. Tranum's affidavit and contends that it was prejudiced by the jury's discussion of fracking because fracking "has received much negative attention in the press and has been the subject of documentaries and countless 'stop fracking' websites" (Dkt. No. 99, at 12). Ms. Hiser argues that Ms. Tranum's affidavit does not indicate that fracking was discussed in a negative light or that the jury continued to discuss fracking after receiving the Court's instruction that it had all the evidence.

By order dated January 10, 2013, the Court set a hearing to determine whether and, if so, by what procedure the Court would examine Ms. Tranum regarding the extent to which the jury may have been exposed to extraneous prejudicial information. This prompted Ms. Hiser's counsel to submit an affidavit from a second juror, Norvella Watson (Dkt. No. 105-1). Ms. Watson states in her affidavit that she did not discuss fracking nor did she hear any discussions of fracking by other jurors after the jurors received the Court's instruction that they had all the evidence in the case and that they would have to decide the case based on their recall of the evidence and the instructions provided (Dkt. No. 105-1).

During the hearing, counsel for XTO indicated that he had spoken to a third juror, Michael Horn. Mr. Horn was the jury foreperson. XTO's counsel claimed that Mr. Horn was the one who addressed fracking during deliberation, although at the hearing counsel did not reveal the substance of his post-trial discussion with Mr. Horn.

After the hearing, the parties submitted additional briefing on the juror misconduct issue. With its brief, XTO submitted an additional affidavit from Ms. Tranum (Dkt. No. 108-1). Ms. Tranum states in her second affidavit that the jury discussed, prior to the Court's instruction that it had all the evidence, the negative impact that fracking might have had on Ms. Hiser's property and that fracking causes earthquakes and vibrations. Ms. Tranum is "reasonably certain" that the jury discussed earthquakes after the Court's instruction (Dkt. No. 108-1). XTO contends that this information warrants a new trial or, at a minimum, an evidentiary hearing.

Ms. Hiser submitted an affidavit from Mr. Horn with her brief (Dkt. No. 109-1). Mr. Horn states in his affidavit that he inquired at the beginning of the deliberations as to whether fracking occurred. Mr. Horn says he explained to the jury, after another juror asked what fracking was, that fracking is a process by which oil and gas companies extract oil or gas from

the well and that sand and water are poured into the well during the process.  He states that he did not make any negative comments about fracking and that he simply repeated common knowledge about the process.  He also states he did not imply or state to the jurors that fracking was actually used at XTO's wells.  Mr. Horn says he "did not participate in any discussion of fracking" or "hear any discussions of fracking or earthquakes by other jurors" after the jury received the Court's instruction that the jury had all the evidence (Dkt. No. 109-1).  Ms. Hiser argues that the testimony of the three jurors indicates that XTO was not prejudiced by the jury's discussion of fracking.  She also asserts that XTO waived its argument by failing to object to the Court's instruction that the jury had all the evidence.

XTO argues that it did not waive its right to seek a new trial because it did not learn until after trial that the jury may have continued to discuss fracking after being instructed that it had all the evidence.  In *United States v. Brown*, 108 F.3d 863 (8th Cir. 1997), the Eighth Circuit Court of Appeals held that the defendant did not waive his right to seek a new trial by agreeing to a limiting instruction, rather than moving for a mistrial, when the court received a note from one of the jurors that another juror was discussing information that was not presented at trial.  The court explained that it was not until the trial court's post-verdict *voir dire* that the defendant became aware that the jury had continued to consider the extra-record evidence after the court gave a limiting instruction.  Until that time, the court concluded, the defendant justifiably presumed that the jury would follow the court's instruction to disregard the evidence.

Ms. Hiser contends that this case is more analogous to *Yannacopoulos v. General Dynamics Corp.*, 75 F.3d 1298 (8th Cir. 1996).  *Yannacopoulos* is distinguishable because XTO has produced some evidence that the jury continued to discuss fracking after receiving the

Court's instruction that it had all the evidence. *See id.* at 1305 ("Yannacopoulos adduced no evidence that the juror actually ignored the judge's instruction and consulted a dictionary.").

Because XTO did not learn until after trial that the jury may have continued to discuss fracking after being instructed that it had all the evidence, it has not waived its argument that the verdict was tainted by consideration of extra-record evidence.

The Court will examine whether the jury may have been exposed to extraneous prejudicial information by inquiring of certain jurors who submitted affidavits. Counsel may attend this inquiry, and the Court will confer with counsel in advance of the proceeding regarding the scheduling of this inquiry and the procedure by which the Court will conduct the inquiry. For these reasons, the Court has under advisement XTO's pending post-trial motions.

SO ORDERED this 23rd day of April, 2013.

_____
Kristine G. Baker
United States District Judge