**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**RUBY HISER**                                                                                              **PLAINTIFF**

**v.**                                          **No. 4:11CV00517 KGB**

**XTO ENERGY INC.**                                                                                **DEFENDANT**

**OPINION AND ORDER**

The trial of this matter resulted in a jury verdict in favor of plaintiff, Ruby Hiser, and against defendant XTO Energy Inc. ("XTO") on Ms. Hiser's claims of negligence, private nuisance, and trespass under Arkansas law (Dkt. No. 84). The jury awarded Ms. Hiser $100,000 in compensatory damages and $200,000 in punitive damages (Dkt. No. 84). XTO has filed a renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure, a motion for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, and an alternative motion for remittitur (Dkt. No. 98). Ms. Hiser has responded (Dkt. No. 100), and both XTO and Ms. Hiser have filed replies (Dkt. Nos. 101, 105). Both parties filed supplemental briefing on these issues (Dkt. Nos. 108, 109, 117, 118). For the following reasons, XTO's motion is denied (Dkt. No. 98).

   **I.     Applicable Standard**

Judgment as a matter of law should be rendered when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). "A motion for judgment as a matter of law is a challenge to the sufficiency of the evidence." *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 621 (8th Cir. 2003) (quoting *Yannacopoulos v. Gen. Dynamics Corp.*, 75 F.3d 1298, 1302 (8th Cir. 1996)). When considering a motion for judgment as a matter of law, the Court must resolve direct factual

conflicts in favor of the nonmovant, assume as true all facts supporting the nonmovant which the evidence tended to prove, give the nonmovant the benefit of all reasonable inferences, and deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn. *Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 770 (8th Cir. 2004). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." *Howard v. Missouri Bone & Joint Cntr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010).

A new trial is warranted where the verdict is against the clear weight of the evidence, clearly excessive, or the result of passion or prejudice. *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000); *White v. Pence*, 961 F.2d 776 (8th Cir. 1992).

In the alternative, XTO moves for remittitur. Remittitur is appropriate when the compensatory damages awarded are excessive and cannot be sustained by the evidence. *Vaccaro Lumber v. Fesperman*, 100 Ark. App. 267, 269, 267 S.W.3d 619, 621 (Ark. Ct. App. 2007). "Where an award of damages is alleged to be excessive, [the Court] review[s] the proof and all reasonable inferences most favorably to the [plaintiff] and determine[s] whether the verdict is so great as to shock the conscience of the court or demonstrates passion or prejudice on the part of the jury." *St. Joseph's Mercy Health Center v. Edwards*, 2011 Ark. App. 560, 385 S.W.3d 849, 853 (Ark. Ct. App. 2011) (citing *Vaccaro Lumber*, 100 Ark. App. at 269, 267 S.W.3d at 621)).

"When federal jurisdiction is premised on diversity of citizenship, a federal district court applies the sufficiency standards of the state in which it sits . . . ." *In re Levaquin Prods. Liability Litig.*, 700 F.3d 1161, 1165 (8th Cir. 2012) (quoting *Carpenter v. Auto. Club Interinsurance Exch.*, 58 F.3d 1296, 1301(8th Cir. 1995)). In this diversity case, the Court applies Arkansas law.

## II. Renewed Motion for Judgment as a Matter of Law

XTO contends it is entitled to judgment as a matter of law for the following reasons: (1) Ms. Hiser did not present any testimony that XTO breached a duty of reasonable care in support of her negligence claim; (2) there was no proof at trial that XTO's drilling operation caused vibrations that entered onto Ms. Hiser's property and proximately caused damage to her home; (3) Ms. Hiser offered no proof from which a reasonable jury could determine the reasonable expense of necessary repairs to Ms. Hiser's home and the loss of usable value during the time she was deprived of its use; and (4) there was not sufficient evidence to submit the issue of punitive damages to the jury. For the following reasons, this Court denies XTO's renewed motion for judgment as a matter of law.

### A. Breach of Duty

In support of its renewed motion for judgment as a matter of law, XTO challenges the jury's verdict as to one of the three claims on which the jury found in favor of Ms. Hiser -- the negligence claim. XTO contends that Ms. Hiser failed to offer any testimony or evidence that XTO breached a duty of reasonable care. Specifically, XTO argues that Ms. Hiser did not show a violation of any law, statute, or regulation or present any proof of what a reasonable person, or drilling operator, would have done in circumstances similar to those shown by the evidence.

Negligence is the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do. *City of Caddo Valley v. George*, 340 Ark. 203, 212, 9 S.W.3d 481, 486 (2000). "Ordinary care is the care a reasonably careful person would use under the circumstances similar to those shown by the evidence." *Mangrum v. Pigue*, 359 Ark. 373, 383, 198 S.W.3d 496, 501 (2004).

"The question of what duty, if any, is owed a plaintiff alleging negligence is always a

question of law and never one for the jury." *Marlar v. Daniel*, 368 Ark. 505, 507, 247 S.W.3d 473, 476 (2007). The Court instructed the jury that XTO's duty was one of ordinary care. XTO lodged no objection to this instruction. Contrary to XTO's contention in its current motion, Ms. Hiser was not required to allege or offer evidence that XTO violated any law, statute, or regulation of the Arkansas Oil and Gas Commission, the state agency that oversees drilling activity. Instead, after the Court instructed the jury that XTO's duty was one of ordinary care, at that point, it was for the jury to determine, from the evidence, how a reasonably careful person would act under the circumstances. *See Catlett v. Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1991); *Linxwiler v. El Dorado Sports Ctr.*, 233 Ark. 191, 343 S.W.2d 411 (1961). Ms. Hiser recites in her response to XTO's motion some of the evidence that she introduced regarding XTO's alleged conduct that supports the jury's verdict on the negligence claim. This Court concludes there is a legally sufficient evidentiary basis for a reasonable jury to find for Ms. Hiser on this issue. Accordingly, XTO is not entitled to judgment as a matter of law on Ms. Hiser's negligence claim.

        **B.**     **Causation**

XTO contends that there was no proof at trial that XTO's drilling operation caused vibrations that entered onto Ms. Hiser's property and proximately caused damage to her home. Proximate cause is "'that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury, and without which the result would not have occurred.'" *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 666 (8th Cir. 2009) (quoting *City of Caddo Valley*, 340 Ark. at 213, 9 S.W.3d at 487). "Proximate cause may be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred." *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 46, 991 S.W.2d 552, 554 (1999)

(internal quotation marks omitted). Proximate cause is a question of fact for the jury unless the proof is "so clear, convincing, and irrefutable that no other conclusion could be reached by reasonable persons." *Carpenter*, 58 F.3d at 1301 (citing *Young v. Johnson*, 311 Ark. 551, 845 S.W.2d 510, 512-13 (1993)).

The jury heard testimony from Ms. Hiser that she felt vibrations and heard her house crack when XTO's drill was in use. Other lay witnesses who visited Ms. Hiser's home testified that they also felt vibrations. Justin Hall, a licensed professional engineer with experience inspecting homes for subterranean vibrations associated with pipeline installations, testified that the damage to Ms. Hiser's home was not the result of poor construction. From this evidence and the other evidence presented in this case, the jury could have determined that vibrations from XTO's well caused damage to Ms. Hiser's home. Contrary to the position of XTO, the jury was not left to infer causation solely from the timing of events.

Viewing the evidence in the light most favorable to Ms. Hiser, giving the evidence its highest probative value, and taking into account all reasonable inferences which may be deduced from the evidence, the Court finds a legally sufficient evidentiary basis to support the jury's verdict.

### C. Compensatory Damages

XTO contends that Ms. Hiser offered no proof from which a reasonable jury could determine the reasonable expense of necessary repairs to Ms. Hiser's home and the loss of usable value during the time she was deprived of its use. XTO argues that Ms. Hiser's testimony that she spent $30,000 repairing her home was speculative because Ms. Hiser produced no invoices, receipts, or bills for the repairs. XTO further argues that Mr. Hall's testimony that it would cost $55,000 to repair Ms. Hiser's home is similarly speculative because Mr. Hall admitted on

cross-examination that he did not consider repairs that Ms. Hiser had already made when arriving at his estimate. Finally, XTO claims that Ms. Hiser offered no proof of decreased rental value from which the jury could have awarded damage for loss of use.

Under Arkansas law, damages must be proven with reasonable certainty. The Arkansas Supreme Court "has not insisted on exactness of proof in determining damages, and if it is reasonably certain that some loss has occurred, it is enough that damages can be stated only approximately." *Morton v. Parkview Apartments*, 315 Ark. 400, 405, 868 S.W.2d 448, 451 (1993); *see also Zhan v. Sherman*, 323 Ark. 172, 913 S.W.2d 776 (1996); *Royal Manor Apartments v. B. J. Powell*, 258 Ark. 166, 523 S.W.2d 909 (1975) (explaining that less certainty is required to establish the amount of damages than to establish that there are damages).

Ms. Hiser testified that she spent approximately $30,000 repairing her home. Mr. Hall testified that, based on his examination of Ms. Hiser's home, it would cost $55,000 to repair the damage. Ms. Hiser also testified that she was not able to enjoy her house the same way she did before XTO started drilling and that she experienced noise on and off for approximately two years.

This testimony is evidence from which a reasonable jury could have determined, with reasonable certainty, the cost of necessary repairs to Ms. Hiser's home and the loss of its usable value during the time she was deprived of its use. XTO cites no authority for its argument that damages for reasonable cost of repair cannot be proven without copies of invoices, receipts, or bills. Moreover, Ms. Hiser's testimony that part of the $30,000 was used to build a new deck and Mr. Hall's testimony that he did not consider repairs that Ms. Hiser had already made when arriving at his $55,000 estimate did not render the amount of damages speculative. In regard to XTO's argument that Ms. Hiser offered no proof of decreased rental value, the Court notes that rental value is only one way of proving damages for loss of use. *See* Arkansas Model Jury

Instructions (Civil), § 2224. The jury awarded damages but was not asked to and, therefore, did not itemize or differentiate the type of compensatory damages it awarded. For these reasons, the Court finds that there was a legally sufficient evidentiary basis to support the jury's award.

### D. Punitive Damages

XTO contends that Ms. Hiser failed to offer sufficient evidence of conduct on the part of XTO to sustain an award of punitive damages. Arkansas Code Annotated § 16-55-206 governs awards of punitive damages. It provides:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
>
> The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206. "A claim for punitive damages is properly submitted to the jury under Arkansas law where the claim is supported by substantial evidence." *Morris v. Union Pac. R.R. Co.*, 373 F.3d 896, 903 (8th Cir. 2004).

XTO points to the following testimony in support of its contention that punitive damages should not have been submitted to the jury: (1) Jay Jones, one of XTO's landmen, testified that XTO had never received complaints from adjoining landowners regarding drilling; (2) Ms. Hiser failed to contradict testimony that XTO believed that the damage to Ms. Hiser's home was due to poor construction; (3) XTO repeatedly met with Ms. Hiser to discuss her concerns and offered to pay for her inconvenience; and (4) XTO offered to test Ms. Hiser's property for vibrations.

There was sufficient evidence to submit the issue of punitive damages to the jury. This case was submitted to the jury on Ms. Hiser's claims of negligence, private nuisance, and trespass. The jury found for Ms. Hiser on all three claims and awarded her compensatory damages. At trial, there was evidence that Ms. Hiser complained early and often about XTO's drilling. She first complained in February 2009, shortly after XTO began drilling its first well on her neighbor's property. XTO drilled six gas wells on Ms. Hiser's neighbor's property between February 2009 and August 2011. Despite Ms. Hiser's insistence that the drilling was causing damage to her home, XTO never had a construction expert examine Ms. Hiser's property. Instead, it relied on the assessment of Jay Jones, one of its landmen. XTO did not offer to test for vibrations until after Ms. Hiser filed her lawsuit and after substantial damage had been done to her home. Finally, the jury could have determined that XTO's offer to pay Ms. Hiser for her inconvenience was merely an attempt to placate her. For these reasons, the Court finds that there was a legally sufficient evidentiary basis to support the jury's punitive damage award.

### III.     New Trial

XTO contends a new trial is warranted for the following reasons: (1) the verdict was against the weight of the evidence; (2) the damages awarded were excessive and the result of passion and prejudice; and (3) the jury improperly considered extra-record evidence during deliberations. For the following reasons, this Court denies XTO's motion for a new trial.

### A.     XTO's Contention That The Verdict Was Against The Weight Of The Evidence

XTO contends that the jury's verdict was against the weight of the evidence for the following reasons: (1) Ms. Hiser offered no scientific proof of causation; (2) every witness who testified that he felt vibrations either could not remember when he felt them or testified that he felt

8

them on a day when no drilling took place; (3) Mr. Hall conceded on cross-examination that the damage to Ms. Hiser's home could be the result of poor construction; and (4) timing of the drilling in relation to damage to home.

"In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence -- it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *White*, 961 F.2d at 780. However, the court cannot "reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because [it] feel[s] that other results are more reasonable." *Id.*

In its order denying XTO's motion for summary judgment (Dkt. No. 51), the Court indicated that XTO cited no controlling authority for its contention that Ms. Hiser must have expert testimony to prove causation. XTO does not cite any additional authority in the present motion to support its position. Accordingly, and for the reasons stated in this Court's Orders, including but not limited to Part II.B. of this Order, the Court denies XTO's motion for a new trial in this regard.

Several witnesses testified that they felt vibrations when they visited Ms. Hiser's home. Barbara Carpenter felt them when she visited Ms. Hiser in the Spring of 2009. Sherry Bell felt them when she visited Ms. Hiser in 2009. Ricky Petty and Gerald Petty felt them when they visited Ms. Hiser in 2010. None of the witnesses could recall the exact dates they felt the vibrations. To discredit their testimonies, XTO offered the testimony of Jamie Sorrells, its corporate representative at trial. Mr. Sorrells testified regarding the "spud" date of each well and the length of each of XTO's drilling operations. The dates given by Mr. Sorrells did not coincide with the dates given by Ms. Hiser's witnesses.

Based on this testimony and the outcome of the trial as conveyed by the jury's verdict, the Court concludes that the jury considered the testimony of Mr. Sorrells and credited the testimony of Ms. Hiser's witnesses. The Court will not reweigh this evidence.

Similarly, the jury decided to give the testimony of Ms. Hiser's expert witness, Mr. Hall, that the damage to Ms. Hiser's home was not the result of poor construction more weight than the testimony of XTO's expert witness, Mr. Brownlee, that it was. The Court will not reweigh this evidence. Because the Court does not conclude that the verdict is against the clear weight of the evidence, the Court denies XTO's motion for new trial on this basis.

### B.   XTO's Contention That The Verdict Was Excessive And The Result Of Passion And Prejudice

XTO contends that the jury's award of compensatory damages was against the weight of the evidence. XTO claims that the only evidence of damages offered was Mr. Hall's testimony that it would cost $55,000 to repair Ms. Hiser's home. Accordingly, XTO argues, the jury's verdict must have been the result of Ms. Hiser crying on the witness stand and counsel for XTO's statement during voir dire and closing argument that XTO is a subsidiary of Exxon Mobil.

Contrary to the position of XTO, and as discussed in Part II.C of this Order, Ms. Hiser testified regarding her loss of use. Ms. Hiser's testimony in this regard, coupled with her testimony that she spent $30,000 repairing her home and Mr. Hall's testimony regarding the estimated cost of repair, provide an evidentiary basis for the jury's award of $100,000. XTO did not object to counsel's statement regarding XTO's affiliation with Exxon Mobil, and the Court finds unpersuasive XTO's argument that the only reason the jury awarded Ms. Hiser $100,000 was because she cried on the stand. Because the Court does not conclude that the verdict is against the clear weight of the evidence, clearly excessive, or the result of passion or prejudice, the Court

denies XTO's motion for new trial on this basis.

### C. XTO's Contention That The Verdict Was Tainted By Extra-Record Evidence

XTO contends that the jury improperly considered extra-record evidence during deliberations. In support of its contention, XTO submits the first affidavit of juror Carrie Tranum (Dkt. No. 99-1). Ms. Tranum stated in her first affidavit that a fellow juror asked during deliberation whether fracking had been used. The juror then explained to the other jurors what fracking is.

At approximately 1:00 p.m. on the day the case was submitted to the jury for deliberation, while deliberating, the jury sent two notes to the Court. One of the notes contained the following question: "Were they drilling only or were they also fracking?" After conferring with counsel for the parties, and without objection from either party, the Court sent the following response to the jury, "You have all of the evidence in this case. You will have to make your decision based on what you recall of the evidence, and the instructions provided." Ms. Tranum stated in her first affidavit that, despite the response from the Court, she "is of the opinion [that] the discussion of fracking played a significant part in the ultimate verdict reached by the jury in this matter." (Dkt. No. 99-1).

This Court, without objection from counsel for either party and when specifically confronted with a question regarding fracking, instructed the jury to make their decision based on what they recalled of the evidence and the instructions provided. "It is certainly reasonable to believe, absent evidence to the contrary, that the jury adhered to the judge's instructions." *Yannacopoulos*, 75 F.3d at 1305. *See also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he 'crucial assumption' underlying the system of trial by jury 'is that juries will follow the

instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury…."); *U.S. v. Brown*, 108 F.3d 863, 867 (8th Cir. 1997) ("Moreover, when Brown agreed to have the court give limiting instructions to the jury, he justifiably presumed that the jury would follow the court's instructions to disregard the extrinsic evidence.").

To obtain a new trial based on juror misconduct, a party must "(1) produce evidence which is not barred by the rule of juror incompetency and (2) produce evidence sufficient to prove grounds recognized as adequate to overturn the verdict." *United States v. Evans*, 220 F.3d 950, 954 (8th Cir. 2000). Rule 606(b) of the Federal Rules of Evidence generally prohibits a juror from testifying regarding the jury's deliberations, "except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention . . . ." Fed. R. Evid. 606(b).

"Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons." *United States v. Rodriquez*, 116 F.3d 1225, 1227 (8th Cir. 1997). "In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that materials are prejudicial to the unsuccessful party." *Moore v. American Family Mut. Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009) (internal quotation marks omitted). "The district court must consider relevant testimony and other evidence as to what occurred to determine 'whether there is a reasonable possibility that the communication altered the jury's verdict . . . .'" *Id.* (quoting *Anderson v. Ford Motor Co.*, 186 F.3d 918, 921 (8th Cir. 1999)).

XTO contends that it was prejudiced by the jury's discussion of fracking because fracking "has received much negative attention in the press and has been the subject of documentaries and

countless 'stop fracking' websites" (Dkt. No. 99, at 12). Ms. Hiser argues that the Tranum affidavit does not indicate that fracking was discussed in a negative light or that the jury continued to discuss fracking after receiving the Court's instruction that it had all the evidence.

By order dated January 10, 2013, the Court set a hearing to determine whether and, if so, by what procedure the Court would examine Ms. Tranum regarding the extent to which the jury may have been exposed to extraneous prejudicial information. This prompted plaintiff's counsel to submit an affidavit from a second juror, Norvella Watson (Dkt. No. 105-1). Ms. Watson stated in her affidavit that the jurors did not discuss fracking after they received the Court's instruction that they had all the evidence in the case and that they would have to decide the case based on their recall of the evidence and the instructions provided.

During the hearing, counsel for defendant indicated that he had spoken to a third juror, Michael Horn. Mr. Horn was the jury foreperson. Defendant's counsel claimed that Mr. Horn was the one who addressed fracking during deliberation, although counsel did not reveal the substance of his post-trial discussion with Mr. Horn.

The parties submitted additional briefing on the extrinsic evidence issue. With its brief, XTO submitted an additional affidavit from Ms. Tranum (Dkt. No. 108-1). Ms. Tranum stated in her second affidavit that the jury discussed, prior to the Court's instruction that it had all the evidence, the negative impact that fracking might have had on Ms. Hiser's property and that fracking causes earthquakes and vibrations. Ms. Tranum was "reasonably certain" that the jury discussed earthquakes after the Court's instruction. XTO contends that this information warrants a new trial, or at a minimum, an evidentiary hearing.

Ms. Hiser submitted an affidavit from Mr. Horn with her brief (Dkt. No. 109-1). Mr. Horn stated in his affidavit that he inquired as to whether fracking occurred at the beginning of

13

deliberations. Mr. Horn stated he explained to the jury, after another juror asked what fracking was, that fracking is a process by which oil and gas companies extract oil or gas from the well and that sand and water are poured into the well during the process. He stated that he did not make any negative comments about fracking and that he simply repeated common knowledge about the process. Mr. Horn stated he "did not participate in any discussion of fracking" or "hear any discussions of fracking or earthquakes by other jurors" after the jury received the Court's instruction that the jury had all the evidence (Dkt. No. 109-1). Ms. Hiser argues that the testimony of the three jurors indicates that XTO was not prejudiced by the jury's discussion of fracking.

By order dated April 23, 2013, the Court indicated that it would examine whether the jury may have been exposed to extraneous prejudicial information by inquiring of certain jurors who submitted affidavits. By order dated July 26, 2013, the Court outlined the procedure by which it intended to conduct the examinations: the Court would conduct the examinations; counsel would be allowed to submit proposed questions; the Court would preview all questions with counsel on the record prior to conducting the examinations; and at the conclusion of each examination, the Court would conduct a bench conference with counsel to determine whether additional questions should be asked.

The Court examined Ms. Watson on August 5, 2013. Prior to conducting the examination, the Court previewed with counsel the questions it intended to ask Ms. Watson. Ms. Watson testified that a juror tried to bring up fracking after receiving the Court's instruction but that the jury foreperson told the juror that they could not talk about fracking. Ms. Watson did not recall a discussion of earthquakes after receiving the Court's instruction. She testified that someone may have mentioned earthquakes but that it was earlier on in the deliberations.

Following a bench conference with counsel, the Court asked Ms. Watson several additional questions about the reference to fracking after receiving the Court's instruction:

> Q. Ms. Watson, I have just a few follow-up questions that I wanted to ask. One is in regard to what you said to me about someone trying to bring [fracking] up after receiving the Court's instruction. What do you remember about what was said?
>
> A. It was just a short sentence. I believe she said: "So we can't say anything about fracking at all?" And the person that was in charge, the gentleman, said: "No. We can't talk about fracking. We can talk about everything else." And that was the end of that.
>
> Q. Okay. Do you remember the physical -- any more about the physical description of who said that, who raised that question?
>
> A. I really don't.
>
> Q. You don't remember hair color or haircut?
>
> A. She might have been blond, tall. I don't know. Honestly, if I had to pick her out right now, I couldn't.
>
> . . .
>
> Q. Okay. That statement, the sentence that you relayed to me, is all you recall?
>
> A. That's all I recall.

Ms. Watson reaffirmed that she did not overhear a discussion of earthquakes after receiving the Court's instruction.

The Court then held another bench conference with counsel. Counsel indicated that they did not have any additional questions for Ms. Watson.

The Court examined Ms. Tranum on August 7, 2013. Prior to conducting the examination, the Court previewed with counsel the questions it intended to ask Ms. Tranum. Ms. Tranum testified that the conversation described in paragraph five of her second affidavit occurred before the jury received the Court's instruction (Dkt. No. 108-1). In regard to her statement in

paragraph eight of her second affidavit that she was "reasonably certain" that the jury discussed earthquakes after the Court's instruction, Ms. Tranum explained that she was "not positive that the discussion of earthquakes occurred after or before the Court's instruction." She testified that the discussion probably occurred "a little further on into the day," but she could not recall who was involved in the discussion. She believed that it was "one or two people having a side conversation regarding it being mentioned in the news in connection with gas drilling."

The Court then held a bench conference with counsel during which it outlined several additional questions it intended to ask Ms. Tranum. Counsel did not have any additional questions for Ms. Tranum.

Following the bench conference, Ms. Tranum testified that she did not wish to add or clarify anything about the conversation described in paragraph five of her second affidavit. The Court then asked Ms. Tranum whether she recalled a juror raising the issue of fracking after the Court's instruction:

> A. Not specifically. No, I don't think so.
>
> Q. Okay. What do you mean when you say "not specifically"?
>
> A. We were there for several hours.
>
> Q. Right.
>
> A. I don't remember -- I remember, you know, the initial -- we went in and sat down. And immediately Mike started talking, asking if, you know, if anyone had heard the word "fracking" used in the courtroom and if, you know, we could ask if that was being done there. Once we got the answers, I do remember the earthquake discussion coming up, but not specifically with relation to fracking, like I don't remember the word "fracking" being used specifically after we were told not to consider that.

Ms. Tranum testified that she believed the discussion of earthquakes occurred after the Court's instruction but that she was not "100 percent certain." She testified that the discussion

16

involved "more than a few people" and lasted "maybe a couple of minutes." She did not recall Mr. Horn talking about earthquakes when he explained to the jury what fracking was. Ms. Tranum explained that she did not mention earthquakes in her first affidavit because counsel for XTO had asked her in connection with preparing her second affidavit if earthquakes had been discussed. When asked about the specific details of the discussion, Ms. Tranum explained:

> A.   I think that was – that was most of it. It had been in the news that gas drilling had caused – possibly caused earthquakes somewhere in the state. And that was just something that everyone kind of – I mean, not everyone in the room was familiar with gas drilling at all. But that was something that most everyone I think had heard about.
>
> As far as the specifics, you know, I mean, it was mostly just anything that anyone could hear on the news or read in the paper, not any real scientific discussion of it, but just kind of a general mention of it.

The Court then held another bench conference with counsel. Counsel indicated that they did not have any additional questions for Ms. Tranum.

Mr. Horn did not respond to the Court's request to schedule a voluntary interview with him. The Court informed the parties of this and permitted additional briefing, after conducting the interviews of Ms. Watson and Ms. Tranum. Both XTO and Ms. Hiser submitted additional briefing (Dkt. Nos. 117, 118). Despite XTO's request, the Court declines to subpoena Mr. Horn for an interview regarding these matters.

Considering all the relevant testimony, for the reasons stated in this Order and in the hearings conducted on this matter, the Court concludes that the jury's verdict was not influenced by extraneous, prejudicial information. The Court denies XTO's motion for a new trial on this basis.

### IV.   Remittitur

In the alternative, XTO asks the Court to reduce the amount of the judgment, repeating the

arguments it makes in the section of its brief that addresses the weight of the evidence. For the reasons stated in this Order in regard to the weight of the evidence and XTO's challenges to it, the Court denies XTO's alternative motion for remittitur.

* * *

For the foregoing reasons, XTO's renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and motion for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure is denied (Dkt. No. 98).

SO ORDERED this 30th day of September, 2013.

_____
Kristine G. Baker
United States District Judge